IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.

ALFREDO ROMERO-HERNANDEZ,

Defendant.

CRIMINAL CASE NO.
1:16-CR-00430-ELR-LTW-4

### MAGISTRATE JUDGE'S ORDER AND FINAL REPORT AND RECOMMENDATION AND ORDER CERTIFYING THIS CASE READY FOR TRIAL

This case is before the court on Defendant Alfredo Romero-Hernandez's ("Defendant") Motion for a Bill of Particulars and a Motion to Dismiss. (Docs. 204, 362). For the reasons outlined below, this Court recommends that Defendant's Motion to Dismiss be **DENIED**. (Doc. 362). Also, Defendant's Motion for a Bill of Particulars is **DENIED AS MOOT**. (Doc. 204).

## I.    BACKGROUND

On December 21, 2016, a grand jury in the Northern District of Georgia returned an Indictment against Defendant charging him in three counts. (Doc. 1). Defendant, along with a number of others, is charged in Count 1 of the Indictment with Conspiracy, in violation of 18 U.S.C. § 371, alleging that Defendant conspired to: (a) knowingly and unlawfully enter into a marriage for the purpose of evading any provision of the immigration laws of the United States, in violation of 8 U.S.C. § 1325(c); (b) knowingly encouraging and inducing an alien to reside in the United States for the purpose of

private financial gain, knowing and in reckless disregard of the fact that such residence is and would be in violation of law, in violation of 8 U.S.C. § 1324(a)(1)(A)(iv), (v)(II) and (B)(i); and (c) knowingly making a false statement under oath with respect to a material fact in an immigration application, affidavit, and other document required by immigration law, in violation of 18 U.S.C. § 1546.  Additionally, Defendant is charged in Count 9 of the Indictment with Alien Harboring, in violation of 8 U.S.C. § 1324(a)(1)(A)(iv); and in Count 16, Defendant is charged with Immigration Document Fraud, in violation of 18 U.S.C. § 1546(a).  (Doc. 1).  In total, fifteen individuals, including the Defendant, were charged in the Indictment.  (Id.).

On June 28, 2017, Defendant filed a Motion for a Bill of Particulars.  (Doc. 204). On August 2, 2018, Defendant filed a Motion to Dismiss.  (Doc. 362).  The Government filed responses to Defendant's Motions  (Docs. 368, 369), and Defendant filed a reply in support of the Motion to Dismiss.  (Doc. 372).

A.   **The Indictment**

Count 1 of the Indictment, Conspiracy, details the alleged conspiracy between Defendant and fourteen others named in the Indictment.  (Doc. 1).  Specifically, the Indictment provides as background information that, at all times relevant to the Indictment, pursuant to The Immigration and Nationality Act ("INA"), a non-citizen of the United States (i.e. an "alien") was not permitted to permanently reside in the United States unless he/she was a lawful permanent resident ("LPR").  (Doc. 1, ¶ 2C).  Pursuant to the INA, if an alien married a United States citizen, he/she could immediately adjust

2

his/her status to a LPR based upon the marriage; however, if an alien married a LPR, the alien was required to wait a period of time prior to adjusting his/her immigration status. (Doc. 1, ¶ 2D).  Under the Cuban Adjustment Act ("CAA"), Cuban nationals received LPR status upon entering the United States, and the CAA provided an exception to the normal waiting period for the adjustment of immigration status for an alien married to an LPR.  (Doc. 1, ¶ 2E).  Pursuant to the CAA, an alien who married a Cuban citizen could adjust his/her immigration status to a LPR regardless of the alien's country of citizenship if the alien was married to the Cuban citizen at the time of the adjustment of immigration status by U.S. Citizenship and Immigration Services ("USCIS").  (Id.).  Upon approval by USCIS of the adjustment application for lawful permanent residence, a Permanent Resident Card (Form 1-551) was issued to the alien who was authorized via Form 1-551 to permanently reside and lawfully work in the United States.  (Doc. 1, ¶ 2F).

The Indictment also sets forth the manner and means by which Defendants purportedly sought to accomplish the purpose of the alleged conspiracy.  (Doc. 1, ¶ 3). According to the Indictment, some of Defendant's alleged co-conspirators arranged fraudulent marriages between non-Cuban aliens and Cuban and United States citizens in order to fraudulently qualify the non-Cuban aliens for certain immigration benefits, including LPR status in the United States.  (Doc. 1, ¶ 3A).  The Indictment further alleges that Defendant, along with eleven co-conspirators, all Cuban citizens, "obtained payment for entering into marriages with non-Cuban aliens so that the non-Cuban aliens

could receive LPR status." (Doc. 1, ¶ 3B). Finally, the Indictment avers that some of Defendant's co-conspirators demanded payment from the non-Cuban aliens in exchange for arranging the fraudulent marriages. (Doc. 1, ¶ 3C).

In listing the purported overt acts performed to accomplish the purpose of the conspiracy, the Indictment,[1] as it relates to Defendant, alleges that, on or about November 8, 2011, a non-Cuban alien entered into a fraudulent marriage in order to obtain LPR status, and this marriage was aided and abetted by Defendant and two other alleged co-conspirators, for which one of the co-conspirators received, and was to receive, payment. (Doc. 1, ¶ 4I). The Indictment also indicates that on or about January 12, 2012, USCIS received an INS Form I-485 for the non-Cuban alien in "furtherance of the marriage fraud scheme." (Id.).

Count 9, Alien Harboring, of the Indictment alleges that, on or about January 12, 2012, Defendant, aided and abetted by the other named Defendants (and others known and unknown to the Grand Jury), for the purpose of commercial advantage and financial gain, encouraged and induced an alien to come to, enter and reside in the United States, "knowing and in reckless disregard of the fact that such residence was and would be in violation of law." (Doc. 1, pp. 8-9). Finally, Count 16, Immigration Document Fraud, of the Indictment alleges Defendant, aided and abetted by other Defendants, and others known and unknown to the Grand Jury, caused to be stated in a U.S. Citizenship and

---

[1] In addition to the overt acts specifically listed, the Indictment also incorporates by reference Counts 2 through 22 as overt acts. (Doc. 1).

AO 72A
(Rev.8/82)

Immigration Services Immigration and Naturalization Service Form I-485 ("Application to Register Permanent Resident or Adjust Status") that a reliable marriage had been established for legitimate reasons with respect to a non-Cuban alien, when in fact, and as Defendants knew, a reliable marriage for legitimate reasons had not been established. (Doc. 1, pp. 10-11).

## DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO ALLEGE AN OFFENSE

In Defendant's Motion to Dismiss, Defendant contends that, while Count 1 of the Indictment charges him with conspiracy in violation of 18 U.S.C. § 371, the Indictment fails to allege facts which constitute a prosecutable offense. (Doc. 362). Specifically, Defendant maintains that, in detailing the manner and means of the conspiracy, the Indictment alleges he "'obtained payment for entering into marriages with non-Cuban aliens so that the non-Cuban aliens could receive LPR status.'" (Id.). Defendant argues, however, that he is not alleged to have entered into such a marriage, and he is not accused of participating in the conspiracy by some other means. (Id.). That said, Defendant submits that Count 1 does not allege he participated in the conspiracy and should be dismissed. (Id.). Furthermore, Defendant contends that the Government, in order to succeed at trial, would be required to constructively amend the Indictment to allege a different means and manner of participation in the conspiracy.

Regarding Count 9, Alien Harboring, and Count 16, Immigration Document Fraud, Defendant argues the applicable statute of limitations requires that an Indictment

5

be filed within five years of commission of both offenses.  (Id.).  Defendant maintains the Government has represented his only role in the offenses was a divorce from his spouse on June 1, 2011,[2] and the Indictment was returned on December 21, 2016, over five years after the date of the divorce.  (Id.).

In response, the Government points out that Count 1 of the Indictment tracks the language of the relevant statutes (8 U.S.C. §§ 1324, 1325; 18 U.S.C. §§ 371, 1546(a)), and sets forth sufficient detail to place Defendant on notice of the allegations against him and to defend against Double Jeopardy.  (Doc. 369).  Although Defendant contends Count 1 does not state facts that constitute a prosecutable offense, because he is described therein as obtaining payment for entering into marriages with non-Cubans, yet he did not enter into a marriage, the Government responds that proof that Defendant actually entered into a marriage or divorced is not an element of the offense, and that Defendant "must only conspire with at least one other to bring about the unlawful plan." (Id.).  Furthermore, the Government maintains Defendant is relying upon facts that the undersigned is not allowed to consider in ruling on a motion to dismiss, and in essence, Defendant is improperly challenging at this stage of the proceedings the sufficiency of the Government's evidence regarding the conspiracy charge.  (Id.).

In regard to Count 9, the Government maintains that Alien Smuggling is governed by a ten-year statute of limitations period, and the crime was completed on January 12,

---

[2] This information was provided to Defendant in the Government's Response to Defendant's Motion for a Bill of Particulars.  (Doc. 368).

2012, the filing date of Form I-485, which was well within ten years of the filing date of the Indictment, December 21, 2016. (Id.).  Although the Government agrees that a five-year statute of limitations governs the Immigration Document Fraud charge, the Government contends the limitations period runs from the date when the offense is completed, not when it began.  (Id.).  Again, utilizing January 12, 2012, as its determinative date for the completion of the crime, the Government maintains the limitations period would have expired in January 2017, while the Indictment was filed on December 21, 2016.  (Id.).

In his reply, Defendant renews his assertion that the Indictment fails to allege he participated in the marriage fraud conspiracy because it neglects to indicate a specific offense committed by him, and, in fact, the "Manners and Means" section of the Indictment expressly excludes him from the Conspiracy Count. (Doc. 372).  Defendant further contends, in a new substantive argument, that there would be a variance of proof between the crime charged in the Indictment and the Government's proof at trial.  (Id.). Finally, in regard to Counts 9 and 16, Defendant appears to have abandoned the statute of limitations argument and, instead, asserts for the first time, that although the Government has provided general descriptions of the offenses of Alien Harboring and Immigration Document Fraud, it has failed to provide facts sufficient to apprise Defendant of the specific offenses of which he is accused under both statutes.  (Id.).

## I.    LEGAL ANALYSIS

Federal Rule of Criminal Procedure 12(b)(3)(B) allows a defendant to file a

7

motion, alleging a defect in the indictment or information.  Fed. R. Crim. P. 12(b)(3)(B).

"An indictment is considered legally sufficient if it: (1) presents the essential elements

of the charged offense, (2) notifies the accused of the charges to be defended against,

and (3) enables the accused to rely upon a judgment under the indictment as a bar

against double jeopardy for any subsequent prosecution for the same offense."  United

States v. Schmitz, 634 F.3d 1247, 1259 (11th Cir. 2011).  The sufficiency of a criminal

indictment is determined from its face.  United States v. Salman, 378 F.3d 1266, 1268

(11th Cir. 2004) quoting United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992).

"It is generally sufficient that an indictment set forth the offense in the words of the

statute itself, as long as those words of themselves fully, directly, and expressly, without

any uncertainty or ambiguity, set forth all the elements necessary to constitute the

offense intended to be punished."  United States v. Garrett, 467 F. App'x 864, 867 (11th

Cir. 2012), citing Hamling v. United States, 418 U.S. 87, 117 (1974); see also Critzer,

951 F.2d at 307-308.  An indictment is defective if it is not framed to apprise the

defendant with reasonable certainty of the nature of the accusation against him, even

though it may follow the language of the statute.  United States v. Bobo, 344 F.3d 1076,

1083 (11th Cir. 2003) (internal citation omitted).  Thus, "if the indictment tracks the

language of the statute, it must be accompanied with a statement of facts and

circumstances that will inform the accused of the specific offense, coming under the

general description, with which he is charged."  Id. (internal quotation marks and

citation omitted).

8

The sufficiency of a criminal indictment is determined from its face. Salman, 378 F.3d at 1268. The court must decide whether the "factual allegations in the indictment, when viewed in the light most favorable to the government, [a]re sufficient to charge the offense as a matter of law." United States v. Torkington, 812 F.2d 1347, 1354 (11th Cir. 1987) citing United States v. Korn, 557 F.2d 1089, 1090-91 (5th Cir. 1977); United States v. Cadillac Overall Supply Co., 568 F.2d 1078, 1082 (5th Cir. 1978) ("on a motion to dismiss the indictment the district court must not pierce the pleadings or make a premature resolution of the merits of the allegations"), cert. denied, 437 U.S. 903 (1978). In determining whether the indictment satisfies this standard, the court must accept all allegations contained therein as true. See United States v. Sharpe, 438 F.3d 1257, 1258-59 (11th Cir. 2006). Finally, the District Court may not dismiss an Indictment based upon a determination of facts that should be developed at trial. Torkington, 812 F.2d at 1354.

## II.   COUNT 1: CONSPIRACY

In this case, the Indictment charges that, beginning in or around March 2011, and continuing through on or about the date of the return of the Indictment by the Grand Jury, that Defendant and others "did knowingly and willfully combine, conspire, confederate, agree and have a tacit understanding with each other to commit . . . offenses against the United States. . ." (Doc. 1, pp. 1-2). The objects of the conspiracy are further outlined in the Indictment, namely to a) knowingly and unlawfully enter into a marriage for the purpose of evading federal immigration laws in violation of 8 U.S.C.

9

§ 1325(c); b) to knowingly encourage and induce an alien to reside in the United States for purposes of private financial gain, knowing and in reckless disregard of the fact that such residence is and would be in violation of the law in violation of 8 U.S.C. § 1324(a)(1)(A)(iv) and (B)(i);[3] and (c) to knowingly make a false statement under oath with respect to a material fact in an immigration application, affidavit, and other document required by immigration law in violation of 18 U.S.C. § 1546.[4] (Doc. 1, p. 1).

18 U.S.C. § 371 defines the crime of conspiring to commit any offense against the United States, which provides

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any

---

[3] The relevant portion of the statute states "Any person who– encourages or induces an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law. . ." 8 U.S.C. § 1324(a)(1)(A)(iv).

[4] The relevant portion of the statute states that "[w]hoever knowingly makes under oath, or as permitted under penalty of perjury under section 1746 of title 28, United States Code, knowingly subscribes as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowingly presents any such application, affidavit, or other document which contains any such false statement or which fails to contain any reasonable basis in law or fact--

> Shall be fined under this title or imprisoned not more than 25 years (if the offense was committed to facilitate an act of international terrorism (as defined in section 2331 of this title)), 20 years (if the offense was committed to facilitate a drug trafficking crime (as defined in section 929(a) of this title)), 10 years (in the case of the first or second such offense, if the offense was not committed to facilitate such an act of international terrorism or a drug trafficking crime), or 15 years (in the case of any other offense), or both." 18 U.S.C. § 1546.

manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 371. In order to sustain a conviction under 18 U.S.C. § 371, the Government must show "(1) [a]n agreement between two or more persons; (2) to commit an offense against, and/or to defraud, the United States or any agency thereof; and (3) the commission of at least one overt act in furtherance of the corrupt agreement." United States v. Lockheed Corp., No.1:94-CR-226-MHS, 1995 WL 17064259, at *5 (N.D. Ga. Jan. 9, 1995) citing United States v. Harmas, 974 F.2d 1262, 1266 (11th Cir. 1992); United States v. Hernandez, 921 F.2d 1569, 1575 (11th Cir. 1991); United States v. Parekh, 926 F.2d 402, 406 (5th Cir. 1991). The overt act requirement is satisfied via the commission of an overt act by *any* conspirator; the defendant on trial need not have committed the overt act. United States v. Isaacson, 752 F.3d 1291, 1303 (11th Cir. 2014).

Defendant relies upon United States v. Cruikshank and its progeny for the assertion that an Indictment must state the offense with "reasonable particularity of time, place and circumstances." 92 U.S. 542, 558 (1875); see also  United States v. Hess, 124 U.S. 483, 487 (1888) (discussing that the language of the statute used in the general description of the offense must be accompanied by a statement of facts and circumstances that will inform the accused of the specific offense that arises under the general description with which he is charged); Bobo, 344 F.3d at 1084. The reasoning underlying this reasonable particularity requirement is explained in Russell v. United

11

States:

> A cryptic form of indictment ... requires the defendant to go to trial with the chief issue undefined.  It enables his conviction to rest on one point and the affirmance of the conviction to rest on another.  It gives the prosecution free hand on appeal to fill in the gaps of proof by surmise or conjecture.

369 U.S. 749, 766 (1962).   The Eleventh Circuit likewise has incorporated this requirement into its jurisprudence, finding that an Indictment that tracks the language of the statute will be sufficient, "as long as it also provides a statement of facts and circumstances that give notice of the offense to the accused."  U.S. v. Walker, 490 F.3d 1282, 1296 (11th Cir. 2007) citing Russell, 369 U.S. at 765; see also U.S. v. Jordan, 582 F.3d 1239, 1246 (11th Cir. 2009); U.S. v. McGarity, 669 F.3d 1218, 1236 (11th Cir. 2012).

Although the Court agrees with Defendant regarding the standard for notice requirements mandated by case law, the Indictment in this matter is more than sufficient in light of constitutional requirements.  In fact, there does not appear to be any indication that Defendant would be surprised by the offense charged or unable to defend against the accusations, as they are clearly identified.  First, the Indictment provides Defendant fair notice of the essential elements of the charged offenses which would enable him to prepare a defense, accompanied by facts and circumstances that apprise Defendant of the nature of the conspiracy charge alleged against him.  Specifically, the Indictment tracks the language of the general conspiracy statute, 18 U.S.C. § 371, and alleges facts specific to Defendant supporting a conspiracy to commit offenses against

12

the United States with three objectives: to enter into unlawful marriages to evade U.S. immigration laws, to encourage and induce aliens to unlawfully reside in the U.S. for private financial gain, and to make false statements of material fact in documents required by U.S. immigration law.  The Indictment likewise tracks the language of the statutes that comprise the three objects of the conspiracy and also includes facts related to Defendant's purported involvement in same.

In regard to particularized facts as related to the Defendant, the Indictment adequately identifies Defendant's purported involvement, including aiding and abetting an unlawful marriage of an alien, identified as "E.L." on November 8, 2011.  The Indictment also includes facts concerning Defendant's alleged aiding and abetting others to unlawfully harbor aliens, which provides a date of January 12, 2012, for the alleged offense, as well as the alien's initials and the names of two other co-defendants involved in the alleged harboring of "E.L."  Finally, in regard to the third object of the conspiracy, Immigration Document Fraud, the Indictment again provides a particular date, January 12, 2012, along with the identity of the alien designated as "E.L.", and the names of two other co-defendants alleged to have been involved.[5]  The Indictment asserts that Defendant and others aided and abetted one another to cause false statements to be presented in immigration documents, that is, that a reliable marriage had been established for legitimate reasons, knowing that such a marriage had in fact

---

[5] The substantive counts are expressly incorporated by reference as overt acts in support of the conspiracy charge.  (Doc. 1).

not been established.  These facts provide Defendant more than adequate notice of the conspiracy allegations that meet constitutional standards, as he has been apprised of not only the general conspiracy offense alleged, but also provided with tailored allegations related to him on specific dates and in regard to a particular alien.

Furthermore, "[a]n [I]ndictment for conspiracy to commit an offense is not required to be as specific as a substantive count and is constitutionally asserted if it sets forth the essential elements of the offense, identifies co-conspirators, the object of the conspiracy, the conspiracy timeframe, and the situs of the conspiracy." United States v. Durrett, No. 1:10-cr-134-WSD, 2012 WL 243761, at *4 (N.D. Ga. Jan. 25, 2012), aff'd 524 F. App'x 492 (11th Cir. 2013) citing United States v. Bascaro, 742 F.2d 1335, 1348 (11th Cir. 1984), abrogated on other grounds, United States v. Lewis, 492 F.3d 1219 (11th Cir. 2007).  In light of this less exacting standard, Count 1 certainly passes constitutional muster in that it identifies the statute violated, references the essential elements of the offense, provides facts about the objects of the conspiracy, the time span of the conspiracy and its locale.  See United States v. Wayerski, 624 F.3d 1342, 1350 (11th Cir. 2010) (explaining that defendant was adequately informed of conspiracy charge against him where the indictment specifically referred to the statute upon which the charge was based, tracked the wording of the statute, named the co-conspirators, and alleged method, time and place of predicate violations).

Additionally, the fact that the Indictment does not allege Defendant entered into an unlawful marriage, aside from in the "Manners and Means" section, does not cause

14

the Indictment to fail to provide notice to him as to the conspiracy charge lodged against him.  Entering into a marriage is not an element of the charge of conspiracy, and the alleged conspiracy had three separate objectives, only one of which was to unlawfully enter into a marriage for the purpose of evading federal immigration laws.  See United States v. Guerra, 293 F.3d 1279, 1285 (11th Cir. 2002) (defendant may be found guilty of conspiracy if evidence demonstrates he knew essential objective of conspiracy, even if he played only a minor role in the overall scheme).  At this stage of litigation, this Court's inquiry is strictly limited to ensuring Defendant has proper notice of the charges brought against him premised upon the allegations set forth within the four corners of the Indictment.  Salman, 378 F.3d at 1268 ("sufficiency of a criminal indictment is determined from its face").

Finally, Defendant also avers in his Motion to Dismiss that, since Count 1 by its own terms does not allege he participated in the overall conspiracy, that the Government would be forced to constructively amend the Indictment to allege a different manner and means of participation.  A constructive amendment of the Indictment can occur when the Government alters at the trial the essential elements of the offense contained in the Indictment, consequently resulting in the jury having a broader basis for conviction than what was contained in the Indictment.  U.S. v. Fuentes, 537 F. App'x 921, 927 (11th Cir. 2013) (prohibition on constructive amendment is to ensure individuals are tried only on charges that are presented in an indictment of a Grand Jury and to prevent alterations that "'broaden the possible bases for conviction beyond what is contained

15

in the indictment'") citing <u>United States v. Keller</u>, 916 F.2d 628, 634 (11th Cir. 1990).
Defendant presupposes that the Government will expand the basis for conviction
beyond the charges alleged in the Indictment, yet this argument is premature.  The
undersigned is constrained at this point in the proceedings to gauge the sufficiency of
the four corners of the Indictment in order to ascertain that the Defendant is properly
on notice of the conspiracy charge made against him, and this standard is satisfied at
this nascent stage of litigation.

## III.   <u>SUBSTANTIVE OFFENSES: COUNTS 9 & 16</u>

Defendant also contends that the substantive charges against him in the
Indictment must be dismissed because they are barred by the expiration of the statute
of limitations.  Specifically, Defendant argues both Count 9, Alien Harboring, and
Count 16, Immigration Document Fraud, are governed by a five-year statute of
limitations.   Defendant maintains that, as the Government has represented the
Defendant's only role in the offenses was to divorce his spouse on June 1, 2011, the
Indictment, returned on December 21, 2016, falls beyond the five-year timeframe
following Defendant's divorce.  The Government, in response, contends that Alien
Harboring, in violation of 8 U.S.C. § 1324(a)(1)(A)(iv), is governed by a ten-year
statute of limitations, and the relevant start date for calculating the statute of limitations
for both Counts is the date the offense is completed.  To that end, the Government
argues that the date for calculating the statute of limitations for both offenses is January
12, 2012, the date the Form I-485 was submitted to USCIS.

16

### A.   __Count 9: Alien Harboring__

Defendant contends that Alien Harboring is governed by a five-year statute of limitations, while the Government maintains the offense is governed by a ten-year statute of limitations.   The Court agrees with the Government that the offense is governed by a ten-year statute of limitations.

"The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions." United States v. Clarke, 312 F.3d 1343, 1346 (11th Cir. 2002) quoting Toussie v. United States, 397 U.S. 112, 114 (1970).  "The statute of limitations in criminal cases begins to run when the crime is 'complete.'" Id. quoting Toussie, 397 U.S. at 115; see also United States v. Arnold, 991 F. Supp. 2d 1307, 1309 (S.D.Ga.  2014) (statute of limitations for criminal offenses "begins to run when each element of the crime has occurred and the crime is complete").  Alien Harboring, defined in 8 U.S.C. § 1324(a)(1)(A)(iv), under section 274(a) of the Immigration and Nationality Act, is governed by a ten-year statute of limitations. See 18 U.S.C. § 3298 ("No person shall be prosecuted, tried or punished for any non-capital offense or conspiracy to commit a non-capital offense *under... section 274(a) of the Immigration and Nationality Act* unless the indictment is found or the information is instituted not later than 10 years after the commission of the offense") (emphasis added); see also United States v. Abdi, No. 1:13-CR-00484-JEC, 2014 WL 3828165, at *3 (N.D. Ga. Aug. 4, 2014) (finding offense under 8 U.S.C. §

1324(a)(1)(A)(iv) is governed by a ten-year statute of limitations).

With respect to Alien Harboring, the Indictment sufficiently alleges that Defendant, aided and abetted by others, for commercial advantage and financial gain, did encourage and induce an alien to come to, enter, and reside in the United States, knowing and in reckless disregard of the fact that such residence was and would be in violation of the law. The chart provided by the Government provides a date of the alleged offense (the filing date of Form I-485), January 12, 2012, as well as the initials of the alien that was purportedly induced by Defendant, aided and abetted by others, to "come to, enter, and reside in the United States." The return date of the Indictment, December 21, 2016, is well within ten years of the date alleged in the Indictment relevant to this count. Furthermore, Defendant's averment that his divorce (which occurred on June 1, 2011) is his "only role" in the offenses, does not render Count 9 time-barred. Accordingly, Defendant's Motion to Dismiss Count 9 should be denied on these grounds.

### B.   Count 16: Immigration Document Fraud

Defendant further contends that Immigration Document Fraud, defined in 18 U.S.C. § 1546(a), is governed by a five-year statute of limitations, and, because the Government has alleged his involvement was a divorce from his spouse on June 5, 2011, this Count is time-barred. The Government agrees the offense is governed by a five-year statute of limitations, but, as with Count 9, the Government asserts that the date for calculating the statute of limitations is January 12, 2012, the date the Form I-

485 was filed was USCIS, which was the completion date of the crime.

18 U.S.C. § 1546(a) is governed by a five-year statute of limitations.  See 18 U.S.C. § 3282;[6] United States v. Youn, No. 1:14-CR-0117-AT, 2015 WL 6693714, at *4 (N.D. Ga. Nov. 2, 2015) (statute of limitations for offense under 18 U.S.C. § 1546(a) is five years).  Although the Government did not cite to any authority indicating that the date of the filing of the I-485 constitutes the date of the completion of the offense for Immigration Document Fraud, the undersigned notes authority that agrees with the Government's assertion.  See Youn, 2015 WL 6693714 at *2 (indicating that filing date of I-485 containing false statements would have started running of statute of limitations); see also United States v. Archer, 671 F.3d 149, 171-72 (2nd Cir. 2011) (crime of visa fraud conspiracy is "complete" with the knowing presentation of a false document to the government).

In this instance, the Form I-485 was presented to USCIS on January 12, 2012; accordingly, the statute of limitations would have expired on January 12, 2017.  The Indictment on this Count, having been returned on December 21, 2016, renders Count 16 timely.  Accordingly, Defendant's Motion to Dismiss Count 16 on timeliness grounds should be denied.

---

[6] "Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." 18 U.S.C. § 3282(a).

AO 72A
(Rev.8/82)

## IV.   NEW ARGUMENTS IN DEFENDANT'S REPLY BRIEF

The undersigned also notes Defendant has raised for the first time in his reply that the conspiracy charge, Count 1, should be dismissed because there would necessarily be a variance between the proof adduced at trial which would prove facts different from those alleged in the Indictment.   See, e.g., United States v. Gold, 743 F.2d 800, 813 (11th Cir. 1984) (variance existed where indictment charged single conspiracy yet evidence demonstrated two different, disconnected smaller conspiracies).   Defendant, in his initial Motion to Dismiss, maintained the Government would be required to constructively amend the Indictment in order to prove Count 1.   Though this argument was deemed premature by the undersigned above, the Court, for clarity, will address the difference between a constructive amendment and a variance.

Though the concepts of variance and constructive amendment are often confused, the Eleventh Circuit in U.S. v. Narog provides instruction as to the difference between the two:

> [A]n amendment occurs when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment.   A variance occurs when the facts proved at trial deviate from the facts contained in the indictment but the essential elements of the offense are the same.

372 F.3d 1243, 1248 (11th Cir. 2004) quoting United States v. Keller, 916 F.2d 628, 634 (11th Cir. 1990).   Accordingly, a constructive amendment goes to an enlargement of the potential bases for which a defendant could be charged, while a variance is concerned with deviations in facts.   See Narog, 372 F.3d at 1247-1248.   Though the

20

Court declines to address the merits[7] of this new substantive argument, the undersigned notes that, as with the constructive amendment argument made by Defendant in his Motion to Dismiss, an argument based on a variance of facts proved at trial from those alleged in the Indictment would be premature at this stage of the proceedings.

Defendant also indicates, for the first time, that the Government has failed to properly allege the offenses of Alien Harboring, Count 9, and Immigration Document Fraud, Count 16, and that the Government's proof at trial would be a "prejudicial variance" from charges contained in the Indictment.  For the reasons articulated above relating to the new arguments attending Count 1, the undersigned declines to consider the new substantive arguments regarding Counts 9 and 16, as the Government has not had an ample opportunity to address the substance of same. Accordingly, based on the foregoing, Defendant's Motion to Dismiss should be denied.

## **DEFENDANTS' MOTION FOR A BILL OF PARTICULARS**

Defendant has moved that the Government should be directed to file a Bill of Particulars which identifies (1) with respect to Count 1, the fact or facts constituting the overt act committed by Defendant in furtherance of the marriage fraud conspiracy

---

[7] The substance of Defendant's argument is made in his reply brief, and the Government has not had an opportunity to fully address that substance.  (Compare Docs. 362 (Motion to Dismiss) with Doc. 369 (Reply)).  As a general matter, courts need not consider arguments raised for the first time by a movant in his reply brief. See Dyer v. United States, 23 F.3d 1421, 1424 (8th Cir. 1994) (declining to consider an argument raised by the defendant for the first time in his reply brief; see also, Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1322 (11th Cir. 2001) ("[S]ince Wilkerson did not raise this issue until her supplemental reply brief, we deem it abandoned...").

AO 72A
(Rev.8/82)

alleged in the case; (2) with respect to Count 9, to identify in what way the Defendant aided and abetted the allegedly fraudulent marriage of M.L.D. and E.L; and (3) with respect to Count 9, what fact or facts support the allegation that Defendant aided and abetted the allegedly fraudulent marriage for the "purpose of commercial advantage and financial gain." (Doc. 204). The Government responded to Defendant's Motion on August 20, 2018, providing a response to each item requested by Defendant. (Doc. 368). To date, Defendant has neither objected to nor replied to the Government's response to the Motion for a Bill of Particulars. Accordingly, the Motion for a Bill of Particulars is **DEEMED MOOT**.

## **CONCLUSION**

Based on the foregoing, this Court **RECOMMENDS** that Defendant's Motion to Dismiss be **DENIED**. (Doc. 362). Additionally, Defendant's Motion for Bill of Particulars is **DEEMED MOOT**. (Doc. 204). Because there are no more motions or other matters pending before the undersigned, this case is hereby certified ready for trial.

**SO ORDERED, REPORTED AND RECOMMENDED** this ___8___ day of February, 2019.

_____
LINDA T. WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)